STATE of Missouri Upon the Information of John M. DALTON, Attorney General of Missouri, At the Relation of Robert C. WALTERS, Stella Stevens and Edward Gilbert, Relators-Appellants,

v.

Alfred I. HARRIS, Respondent.

No. 49208.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 14, 1963.

F. Wm. McCalpin, St. Louis, for relators-appellants.

Merle L. Silverstein, Rosenblum & Goldenhersh, St. Louis, for respondent.

HOUSER, Commissioner.

At the relation of three residents of the twenty-second ward of the City of St. Louis the State of Missouri filed an information in quo warranto in the Circuit Court of the County of St. Louis praying for an order of forfeiture of office and ouster of Alfred I. Harris as alderman of that ward, on the ground that after election he moved from his residence in the city ward to St. Louis County in violation of a provision of the city charter that an alderman shall forfeit his office if at any time he not be a resident of the ward from which elected. Following issuance of the writ respondent filed a motion to dismiss the information and dissolve the writ, alleging that the information does not disclose sufficient facts upon which relief can be granted by the circuit court; that the circuit court does not have jurisdiction over the subject matter; that the charter provision that the board of aldermen shall be the judge of the qualifications of its members vests in the board the exclusive jurisdiction to determine their qualifications and disqualifications. The motion to dismiss was sustained. Relators have appealed from the ensuing judgment dismissing and discharging respondent of and from the writ of ouster.

We have jurisdiction because this appeal involves the construction of the Constitution of Missouri, 1945, Article V, § 4, V.A.M.S., relating to the jurisdiction of

circuit courts to issue and determine original remedial writs. Article V, § 3, Constitution of Missouri, 1945, V.A.M.S.

■ The pertinent constitutional, statutory and charter provisions follow:

Article V, § 4, Constitution of Missouri, 1945, V.A.M.S.:

"The supreme court, courts of appeals and circuit courts shall have a general superintending control over all inferior courts and tribunals in their jurisdictions, and may issue and determine original remedial writs."

Section 531.010, RSMo 1959, V.A.M.S., authorizes the attorney general to exhibit to the circuit court an information in the nature of a quo warranto "[i]n case any person shall usurp, intrude into or unlawfully hold or execute any office * * *."

Supreme Court Rule 98.01, V.A.M.R.:

"In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the Attorney General of the state, * * * shall exhibit to the circuit court, * * * an information in the nature of a *quo warranto,* at the relation of any person desiring to prosecute the same; * * *."

Article IV, § 7 of the Charter of the City of St. Louis (1914):

"Said Board shall be the judge of the qualifications of its members, except of its president; * * *."

Article IV, § 2 of the Charter of the City of St. Louis (1914):

"[I]f any Alderman * * * shall at any time not be a resident of such ward, he shall thereby forfeit his office."

Appellant contends that the court erred in sustaining the motion to dismiss; that the charter provision, properly construed, does not abate the jurisdiction of the circuit court and that the circuit court had jurisdiction to issue and determine the writ of quo warranto under Article V, § 4, supra.

Respondent takes the position that the charter provision establishes an exclusive procedure for determining the qualifications of an alderman, thereby ousting the circuit court of jurisdiction; that Article V, § 4 does not enlarge the jurisdiction of the circuit court over the subject matter of quo warranto and that the subject matter of this proceeding was outside that jurisdiction under the common law existing when the constitution of 1945 was adopted. Respondent urges that the plain, ordinary meaning of the words used in Article IV, § 7, is that of exclusiveness; that such a finding is required upon consideration of the historical background of the section, prior decided cases, and the doctrine of separation of powers.

The principal issue is whether the city charter vests in the board of aldermen the exclusive right to determine the qualifications of its members. It does not do so unless it takes away from the courts their jurisdiction to adjudicate such matters. Prior to the adoption of the 1945 constitution circuit courts had jurisdiction to issue and determine writs in the nature of quo warranto, flowing from their general common law jurisdiction. Extraordinary Remedies Under Missouri's New Code and Constitution, 18 K.C.Law Review 173, 174. Article V, § 4, supra, for the first time provided an express constitutional basis for the issuance of original remedial writs by circuit courts. Just as this provision confers jurisdiction on the Supreme Court, State ex inf. Taylor v. Cumpton, 362 Mo. 199, 240 S.W.2d 877 (1951); State on inf. Dalton v. Dearing, 364 Mo. 475, 263 S.W.2d 381 (1954); State on inf. Dalton v. Gamble, 365 Mo. 215, 280 S.W.2d 656 (1955), so also it confers jurisdiction on the circuit courts to issue the writ of quo warranto as an original remedial writ.

We pass over the question of the power of the people to limit such a constitutional

grant of power,[1] and confine ourselves to the construction of the language of Article IV, § 7. While there is a diversity of opinion on the question, the rule to which we adhere and which obtains in many if not most other jurisdictions is that notwithstanding statutory or charter provisions that the municipal legislative body shall be the judge (or "shall judge") of the qualifications of its members, the jurisdiction remains in the courts to pass upon the qualifications of the members of the body, and the power vested in the municipal body is concurrent and cumulative, unless the grant excludes the jurisdiction of the courts by express provision or necessary implication. The jurisdiction of the courts is said to remain unless it "clearly appears," McQuillin, Municipal Corporations, 3rd ed., Volume 3, § 12.93, p. 348, or unless it appears "with unequivocal certainty," Dillon, Municipal Corporations, 5th ed., Vol. I, § 379, that the legislature (in this case the people voting on the charter) intended to take it away. State ex rel. Turner v. Fitzgerald, (1869) 44 Mo. 425; Bouldin v. Davis, 197 N.C. 731, 150 S.E. 507; 62 C.J.S. Municipal Corporations § 390, c. (2) (b), p. 739; Anno. 107 A.L.R. 205, IV, b. 1, 1. c. 220, citing cases from twelve states. We construe Article IV, § 7 to grant the power to the board of aldermen without in terms denying it to the courts. The language of Article IV, § 7 does not employ the words "exclusive," "sole," "final," or other words of that import. Neither expressly nor by necessary implication does it express the purpose to take from the courts their constitutional[2] and statutory[3] jurisdiction to inquire into the right of a person to hold and exercise the office of alderman, or make the jurisdiction of the board exclusive and its

action final and conclusive. It creates a concurrent and cumulative power under which the board may judge of the qualification of its members in the first instance, thus enabling it to organize, proceed to transact business and function expeditiously, but it does not close the door to the courts which, on behalf of the people, may inquire by writ of quo warranto into the right of any person holding and exercising the office of alderman. Nothing in the nature of the office of alderman proscribes such inquiry and it takes express and unequivocal language, or language from which the implication is inescapable, to divest the courts of a jurisdiction always possessed.

State ex rel. Turner v. Fitzgerald, supra, was a quo warranto proceeding to test the right of an incumbent councilman of the City of St. Joseph, a charter city, to hold his office. The charter provided that the board of councilmen "shall judge of the qualifications, elections and returns of the members thereof." The board passed on the qualifications of respondent as a member of the body and seated him. Relator, a contestant for the office, filed an information which was demurred to on the ground of want of jurisdiction in the circuit court. Respondent maintained that under the charter the judgment of the board was final and conclusive. The circuit court sustained the demurrer. On appeal this Court reversed and remanded, holding that in the absence of express terms so declaring the charter provision did not make the judgment of the board final and conclusive, and that the circuit court had jurisdiction to determine the right to the office. In answering the question whether the action of the board was final and conclusive the Court said, 44 Mo.,

1. Whether the people of the City of St. Louis have the power to adopt a charter provision conferring exclusive authority upon the board of aldermen to finally determine the right to membership on the board and excluding the courts from their constitutional power to issue the original remedial writ of quo warranto and their statutory power and power under Supreme Court rule to inquire into

the right to hold any office is a question which, upon this record, we need not decide in view of our construction of the charter provision, Article IV, § 7.

2. Article V, § 4, Constitution of Missouri, 1945, V.A.M.S.

3. RSMo 1959, § 531.010, V.A.M.S.; Sup. Ct. Rule 98.01.

l. c. 427: "Doubtless the Legislature might have made it so. It has not, however, by any express terms, seen fit so to declare. If it thus intended, that intention is to be ascertained from a construction of the act in question in connection with other acts. The statute (Gen.Stat.1865, ch. 157)[4] confers upon the Circuit Court jurisdiction, on proper complaint, to try and give judgment of ouster in cases where 'any person shall usurp, intrude into, or unlawfully hold or execute any office or franchise' whatever. The language of the enactment is broad and comprehensive. In its terms it embraces the case at bar. Does the charter of the city of St. Joseph exempt the respondent from the operation of the comprehensive words of this statute? Not by its express terms, certainly; nor yet by the necessary force of the language employed. There is no necessary antagonism between the two acts. The council judges of the election and qualification of its members in the first instance. It may organize and proceed to the transaction of business, and its acts will be legal and obligatory so far as the legality of the composition of the board is involved. But that does not exclude the idea of an investigation by the common-law courts of the right of any particular member to the office which the council board may have adjudged him qualified to fill. There is nothing in the nature of the office of councilman furnishing an argument in support of the proposition that the officer is shielded from any inquiry into his right to the office by the courts of law." This Court quoted with approval from Ex parte Heath, (N.Y.) 3 Hill. 42, l. c. 51, 52, which indicated that the power bestowed was merely a concurrent power; that a statute using the word "solely" or declaring a decision of an inferior court conclusive or final might by a liberal construction imply an intent to take away the power, but that such words have often been held not to divest the superior court of its supervisory power, and

to give a statute such an effect "the legislature must say *in so many words* that they intended to take the power away."

While the implied holding of the Turner case that quo warranto (rather than the election contest laws) is an available remedy in a contest between a relator seeking the office and the respondent incumbent, has been overruled, see State ex rel. Ponath v. Hamilton, Mo.Sup., 240 S.W. 445, 449, the principles announced and the reasoning advanced in the opinion have not been repudiated. We approve its rationale as fully applicable and pertinent in resolving the issue here presented.

Since we find no ambiguity in Article IV, § 7, supra, we need not resort to the prior history of the charter provision, or the proceedings of the Charter Board of Freeholders which considered, drafted and adopted the 1914 charter, for aid and assistance in its construction.

■ Respondent advances the argument that the circuit court is without jurisdiction because as a member of the board of aldermen of the City of St. Louis respondent is a member of the legislative branch of the government, as such removed from the investigative jurisdiction of the judiciary on analogy to the holdings of federal courts that under Art. I, § 5 of the Constitution of the United States [5] each house of Congress is the sole and exclusive judge of the qualifications of its own members, and that all judicial bodies are precluded from asserting any jurisdiction over matters involving the qualifications of representatives and senators. The argument is that the board of aldermen of the City of St. Louis constitutes a coordinate branch of government, the same as the General Assembly, and "should be accorded a similar status although it rules only a City"; that under the doctrine of separation of powers the legislative branch is removed from "judicial interference or supervision." Authority is

---

4. Now § 531.010, RSMo 1959, V.A.M.S.; Sup.Ct. Rule 98.01.

5. "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members. * * *."

said to be found in State ex rel. Vogel v. Bersch, 83 Mo.App. 657, in which the St. Louis Court of Appeals said that the charter of the City of St. Louis "makes of the municipal assembly a miniature co-ordinate branch of the state government, independent of the judiciary" as to "all matters committed to its judgment and discretion by the charter * * *"; that the municipal assembly is not subordinate to the judiciary; that it and the General Assembly are co-ordinate branches of government.

The analogy is incomplete and the language of the Bersch case is too broad. The City of St. Louis is not a coordinate branch of the state government. The subordinate position of the City of St. Louis in the governmental hierarchy was manifested by the constitution of 1875, which (Art. IX, § 23) required that the charter of the city and its amendments be "in harmony with and subject to the Constitution and laws of Missouri," and which (Art. IX, § 25) gave the General Assembly "the same power over the city and county of St. Louis, that it ha[d] over other cities and counties of this State" and is confirmed by the decisions of this court, which has referred to its board of aldermen as a subordinate tribunal, State ex rel. Davisson v. Bolte, 151 Mo. 362, 52 S.W. 262, 265; has required its municipal ordinances to be in harmony with the constitution and legislative enactments, Ex parte Tarling, Mo.Sup., 241 S.W. 929, and has invalidated its municipal measures inconsistent with the general laws of the state. State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 2 S.W.2d 713, 719; State ex rel. Knese v. Kinsey, 314 Mo. 80, 282 S.W. 437; City of St. Louis v. Dreisoerner, 243 Mo. 217, 147 S.W. 998. Its charter has the force and effect of an act of the Legislature, Kirkwood v. City of St. Louis, Mo. Sup., 351 S.W.2d 781 and cases cited, l. c. 784; Giers Improvement Corp. v. Investment Service, Inc., 361 Mo. 504, 235 S.W. 2d 355, 359, no more and no less. Its board of aldermen does not stand on an equality with the General Assembly as an essential

part of the legislative department of this state. It possesses no inherent legislative power, "and is not, in virtue of its own right, free from judicial control, but is so only when it is exercising legislative power conferred by law upon it, and then only in respect of the exercise of that power." State ex rel. Abel v. Gates, (en banc) 190 Mo. 540, 89 S.W. 881, 884. As it existed on February 27, 1945, the date of the adoption of the constitution, the City of St. Louis was a creature or political subdivision of the state, State ex rel. Spencer v. Anderson, Mo.App., 101 S.W.2d 530, 534, possessing only such delegated powers as were conferred upon it by express or implied provisions of its charter and the general laws. Petition of City of St. Louis v. Sommers, 364 Mo. 700, 266 S.W.2d 753. By the adoption on February 27, 1945 of Constitution of Missouri, 1945, Art. VI, § 31, which was intended to preserve the status quo, the City of St. Louis was recognized *as then existing* as a city and its continuance as a city for city purposes was provided for with its then charter (the 1914 charter), subject to changes and amendments provided by the constitution or by law, "and with the powers, organization, rights and privileges permitted by this constitution or by law." Any new or revised charter is required to be "in harmony with the constitution and laws of the state." Constitution of Missouri, 1945, Art. VI, § 32(a). Both constitutions vest the legislative power in the General Assembly of the State of Missouri, Constitution of Missouri, 1875, Art. IV, § 1; Constitution of Missouri, 1945, Art. III, § 1. Neither constitution vests any part of the legislative power in the board of aldermen of the City of St. Louis. A member of the board of aldermen of the City of St. Louis is not immune from judicial inquiry into his qualifications *by reason of his official position*. Article IV, § 7 does not preclude the circuit court from investigating and determining the qualifications of a member of the board of aldermen of the City of St. Louis by writ of quo warranto, and it follows that the order and

judgment of the circuit court must be reversed and the cause remanded for a hearing on the merits. It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.